**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| VOCALIFE LLC, | § | |
| | § | Case No. 2:21-cv-00123-JRG |
| Plaintiff, | § | (LEAD CASE) |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| HARMAN INTERNATIONAL | § | |
| INDUSTRIES INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |
| VOCALIFE LLC, | § | |
| | § | Case No. 2:21-cv-00124-JRG |
| | § | (MEMBER CASE) |
| Plaintiff, | § | |
| | § | **JURY TRIAL DEMANDED** |
| v. | § | |
| | § | |
| GOOGLE LLC, | § | |
| | § | |
| Defendant. | § | |
| . | § | |

**JOINT MOTION FOR ENTRY OF OPPOSED PROTECTIVE ORDER**

Defendant Google LLC ("Defendant") and Plaintiff Vocalife LLC ("Plaintiff" and, collectively, "the Parties") hereby submit the Proposed Disputed Opposed Protective Order attached as Exhibit A. The Parties have indicated their competing proposals using highlighting and square brackets in Exhibit A (Defendant's proposed additional language is indicated with: Defendant's Proposal). The Parties were able to reach agreement on almost all provisions of the Protective Order, but have two disputes regarding (1) whether "source code" should include not just computer code, but also "formulas, engineering specifications, or schematics that define or otherwise describe in detail algorithms or structure of software or hardware designs;" and

(2) whether the Protective Order should include a so-called "acquisition bar," which would prevent individuals who review designated materials from subsequently engaging in activities related to the acquisition of patents for a period of 3 years from the final disposition of this case. The Parties' competing proposals and arguments in favor of their proposals are presented below:

## I.      THE DEFINITION OF "SOURCE CODE"

### Plaintiff's Position

Vocalife submits that the restrictions on "Source Code" should be limited to actual computer source code.  Indeed, the Court's sample Protective Order limits "Source Code Material" to material that include "computer source code and/or live data (that is, data as it exists residing in a database or databases)."   Defendant seeks to widen "Source Code" to include "documents substantively relating to" such code.  As the party seeking to limit discovery, Defendant bears the burden of showing good cause.  *Affinity Labs of Texas, LLC v. Samsung Elec. Co., Ltd.*, No. 1-12-CV-557, 2013 WL 12147667, at *1 (E. D. Tex. Oct. 29, 2013) (citing *In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010)).

"[D]istrict courts regularly provide for additional restrictions on discovery to account for the unique characteristics of source code." *Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1300 n.13 (Fed. Cir. 2016) (emphasis added); *see also id.* (noting that source code "is often a company's most sensitive and valuable property").  In this case, Defendant has requested, and Vocalife has agreed to, an extensive listing of restrictions related to "Source Code," such as: limiting access to source code to authorized individuals on a standalone computer located in a locked room at Defendant's counsel's office during business hours, limiting access to inspect source code to a minimum of three business days' notice, visual monitoring of source-code reviewer activities, review of source-code reviewer's notes by a "Notes Examiner" of the producing Party, prohibiting the copying and electronic reproduction and limiting paper copy printouts to 650 pages, and

restricting the mode of transportation of printouts, among others. (Ex. A ¶¶ 10(a)-(n).)

Defendant seeks to impose these onerous restrictions on documents that do not bear the "unique characteristics" of source code, but instead "substantively relat[e]" to such code.  The precise contours of what "substantively relating to" means are left out of Defendant's proposal, but such documents would likely include the "specifications, schematics, flow charts, artwork, formulas, or other documentation" sufficient to show the operation of the Accused Products that are separately required to be produced under the Local Rules. P.R. 3-4 (a).  *See also Edward D. Ioli Tr. v. Agilon Corp.*, No. 2:10-cv-605-JRG, 2012 WL 5830711, at *2-3 (E.D. Tex. Nov. 16, 2012) (noting that production of specifications and schematics does not excuse obligation to produce source code and that source code is different from such "additional materials").

Defendant defends its expansive view of source code by noting that it possesses "detailed technical documents that include excerpts of source code or describe the confidential hierarchy and structure of the code." *Infra*.  First, Defendant's proposal sweeps in numerous documents that exist outside that category, demonstrating its overbreadth.  Second, Defendant does not explain how documents that describe "hierarchy" or "structure" are tantamount to the actual source code. Defendant has thus failed to meet their burden.

Recently, the Court has rejected Google's similar requests to expand the definition of source code to include technical documentation.  *RFCyber v. Google LLC*, No. 2:20-cv-00274-JRG, Dkt. 85 at 6 (E.D. Tex. July 26, 2021).

Vocalife's ability to litigate this case will be prejudiced if schematics, specifications, and other documents that are commonly produced with "Attorneys' Eyes Only" restrictions are instead treated as source code.  Additionally, imposing the restrictions set forth in paragraphs 10(a)-(n) on "formulas, engineering specifications, or schematics that define or otherwise describe in detail the

algorithms or structure of software or hardware designs" would result in an unwarranted restriction on the access, availability, and use of discoverable information in this case.  Accordingly, the Court should reject Google's proposal and limit "Source Code" to source code.

**Defendant's Proposal**

Defendant proposes that the definition of "source code" include "formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs."

Defendant maintains two types of documents that contain proprietary source code: (1) code that exists on a standalone basis, and (2) formulas, engineering specifications, and schematics that include excerpts of source code or describe the confidential hierarchy and structure of the code.  Both types of documents contain highly confidential information related to Defendant's code base, and both reveal highly proprietary information regarding the design, structure and architecture of the accused software products. *See Rensselaer Polytechnic Instit. v. Apple Inc.*, 2014 WL 1871866, at *4 (N.D.N.Y. May 8, 2014) (rejecting argument that technical documents that describe software "design or architecture" are "not part of the true source code" and noting that "documents describing the architecture of source code are every bit as proprietary and trade-secret as the source code itself").  If either category of document were disclosed to unauthorized third parties, whether intentionally or inadvertently, it would result in significant competitive harm to Defendant.  For this reason, Defendant limits access to both types of documents, even internally among Defendant's own employees.

Courts regularly adopt definitions of "source code" that do not distinguish between code that exists on a standalone basis and technical documents that contain or describe the structure of such code.  For example, the Model Protective Order for the Northern District of California defines

"source code" to include not just computer code, but also "formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software," which is the same language Defendant proposes here.  *See* Northern District of California, Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets (available at https://www.cand. uscourts.gov/forms/model-protective-orders/); *see also Telebuyer, LLC v. Amazon.com, Inc.*, 2014 WL 5804334, at *3 (W.D. Wash. July 7, 2014) (adopting definition of "source code" that included documents "that define or otherwise describe in detail the algorithms or structure of software or hardware designs" and noting that the court should "err on the side of caution when dealing with highly technical materials").

Plaintiff's proposed definition of "source code" encompasses only the first category of code, which exists on a standalone basis, and excludes the other category of source code, which exists in detailed technical documents containing code or describing the code's architecture.  As a result, Plaintiff's proposal would result in Defendant's source code-related documents not being subject to the enhanced protective measures applicable to source code.  Plaintiff provides no compelling explanation why this second category of documents, which pose the same competitive risks from inadvertent disclosure, should be subject to weaker protections.

## II.    ACQUISITION AND PROSECUTION BAR

### Plaintiff's Position

Vocalife submits that Defendant's proposed acquisition bar is inappropriate.  Defendant has not shown good cause to prevent Plaintiff's counsel from any activities relating to (1) acquiring patents or patent applications relating to the field of the invention of the patents-in-suit; and (2) advising or counseling its clients regarding such acquisitions, during the pendency of this case and for three years after the final disposition of this action.  Defendant bears the burden of showing that a bar is appropriate because (1) the risk of inadvertent disclosure exists; and (2) the balance

of interests suggests a bar is appropriate. *Deutsche Bank Tr. Co. Ams.*, 605 F.3d at 1378.

Regarding the proposed acquisition bar, Defendant has not shown good cause to impose an at least three-year bar on Plaintiff's counsel from any activities relating to acquiring patents or patent applications relating to the broad categories of audio processing, speech recognition, and beamforming technology, and advising or counseling its clients regarding such acquisitions. Defendant has not shown that there is a real risk of inadvertent disclosure or that the balance of interests indicates a bar is appropriate.  The balance of interests does not favor the bar, and Defendant cannot demonstrate that any potential harm may occur without the bar.  By contrast, imposing the bar will drastically harm both Plaintiff's counsel and other parties, including Vocalife, who would be denied the counsel of their choice. *See In re Deutsche Bank*, 605 F.3d at 1379 ("[T]he district court must balance the risk against the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice."). Because Defendant has failed to show that there is a risk of inadvertent disclosure and that the balance of interests favors a bar, the Court should decline to enter Defendant's proposed Acquisition Bar. *Jenam Tech, LLC v. Samsung Elecs. Am.*, No. 4:19-cv-00250-ALM-KPJ, 2020 WL 757097, at *1-2 (E.D. Tex. Feb. 4, 2020) ("The Court finds Defendants have not met their burden, particularly considering the broad restriction the proposed Acquisition Bar would impose upon Plaintiff's counsel and Defendants' failure to demonstrate the potential harm of not including the Bar."); *see AGIS Software Dev. LLC v. T-Mobile USA, Inc., et al.*, No. 2:21-cv-00072-JRG, Dkt. 96 (E.D. Tex. July 2, 2021) ("Balancing protection against inadvertent disclosure of Defendants' confidential information against choice of counsel, the Court finds the balance of interests disfavors an acquisition bar.").

**<u>Defendant's Position</u>**

Defendant proposes that the Protective Order include an "acquisition bar," which will prevent individuals who review confidential source code and technical documentation from subsequently engaging in activities related to the acquisition of patents that cover that same confidential technology for a period of two years.  Plaintiff's counsel agreed to a similar "prosecution bar," but does not agree to an "acquisition bar" of the same scope and duration. Plaintiff's counsel's history of litigation against Defendant weighs in favor of an acquisition bar in this case.

Acquisition bars ensure that individuals who access confidential technical information do not "consciously or subconsciously use their knowledge . . . to advise a client on which patents to acquire." *EPL Holdings, LLC v. Apple Inc.*, No. 12-CV-04306, 2013 WL 2181584, at *4 (N.D. Cal. May 20, 2013).  The rationale for such restrictions is well-established: "It is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so."  *In re Deutsche Bank Tr. Co. Ams.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010).  Notwithstanding general provisions "specifying that designated confidential information may be used only for purposes of the current litigation," and notwithstanding the good faith of all individuals involved, courts recognize that "there may be circumstances in which even the most rigorous efforts . . . to preserve confidentiality . . . may not prevent inadvertent compromise."  *Id.*; *see also Catch A Wave Techs., Inc. v. Sirius XM Radio, Inc.*, No. 12-CV-05791, 2013 WL 9868422, at *1 (N.D. Cal. Aug. 6, 2013) ("The patent acquisition bar . . . adds an additional layer of protection by prohibiting not just disclosure and use, but also advising.").

Plaintiff recognized and endorsed these settled principles when it agreed to a prosecution bar that is identical in scope to the proposed acquisition bar.  The justification underlying these two provisions is identical—it will be difficult, if not impossible, for an individual who has seen Defendant's confidential information mentally to segregate that information when later advising on patent prosecution or acquisition related to that information.  The risks of inadvertent disclosure and competitive misuse are the same with respect to both prosecution and acquisition:

> Counsel for Plaintiff has acquiesced to the imposition of a patent prosecution bar, and, therefore, apparently agrees that there could possibly be a risk of inadvertent disclosure of Defendants' confidential information in the course of representing their client before the PTO.  *Therefore, it is hard to conceive that there would be little or no risk of inadvertent disclosure when these same attorneys advise their client in matters regarding acquisitions of patents.*

*E-Contact Techs., LLC v. Apple, Inc.*, No. 11-CV-00426, 2012 WL 11924448, at *2 (E.D. Tex. June 19, 2012) (emphasis added); *see also EPL Holdings*, 2013 WL 2181584, at *4 (explaining that patent acquisition and prosecution create the same risk of inadvertent use because "litigation counsel may consciously or subconsciously use their knowledge . . . to advise a client on which patents to acquire"); *Inventor Holdings, LLC v. Google, Inc.*, No. 14-CV-00186, 2014 WL 4369504, at *1 (D. Del. Aug. 27, 2014) ("It is difficult to envision circumstances in which the inadvertent disclosure of [Google's] highly confidential information would not be a risk about which to be concerned when the issue being discussed is the future acquisition of patents.").  For these reasons, when acquisition bars are contested, courts routinely conclude that they are appropriate and necessary in patent cases.[1]

---

[1] *See, e.g.*, *Intellectual Ventures I*, 2019 WL 343242, at *4; Order at 3, *Uniloc USA, Inc. v. Apple Inc.*, No. 18-CV-00572 (N.D. Cal. July 2, 2018), ECF No. 107; Order at 10, *Univ. of Va. Patent Found. v. Gen. Elec. Co.*, No. 14-CV-00051 (W.D. Va. June 11, 2015), ECF No. 61; *Telebuyer*, 2014 WL 5804334, at *7; *Inventor Holdings*, 2014 WL 4369504, at *2; *Catch A Wave Techs.*, 2013 WL 9868422, at *1; *EPL Holdings*, 2013 WL 2181584, at *5; *Unwired Planet LLC v. Apple Inc.*, No. 12-CV-00505, 2013 WL 1501489, at *7 (D. Nev. Apr. 11, 2013); Transcript at 29:20–30:4, *Intellectual Ventures I LLC v. Altera Corp.*, No. 10-CV-00065 (D. Del. Aug. 1, 2012), ECF No. 145; *E-Contact Techs.*, 2012 WL 11924448, at

An acquisition bar is particularly justified in cases, such as this one, involving entities whose primary business is acquiring and asserting patents.  *See, e.g., Intellectual Ventures I*, 2019 WL 343242, at *3 (entering acquisition bar where plaintiffs were "in the business of acquiring patents and patent applications in order to monetize them"); *Inventor Holdings*, 2014 WL 4369504, at *1 (emphasizing plaintiff's status as a non-practicing entity in entering acquisition bar).  Indeed, Plaintiff's counsel has been active in suing Defendant on behalf of patent-assertion entities, including in three actions currently pending against Google in this District.  As a result, there is an elevated risk that Plaintiff's "counsel may consciously or subconsciously use their knowledge . . . to advise a client on which patents to acquire."  *EPL Holdings*, 2013 WL 2181584, at *4.


Dated: August 18, 2021                      Respectfully submitted,

                                             /s/ *Vincent J. Rubino, III*
                                            Alfred R. Fabricant
                                            NY Bar No. 2219392
                                            Email: ffabricant@fabricantllp.com
                                            Peter Lambrianakos
                                            NY Bar No. 2894392
                                            Email: plambrianakos@fabricantllp.com
                                            Vincent J. Rubino, III
                                            NY Bar No. 4557435
                                            Email: vrubino@fabricantllp.com
                                            **FABRICANT LLP**
                                            411 Theodore Fremd Avenue,
                                             Suite 206 South
                                            Rye, New York 10580
                                            Telephone: (212) 257-5797
                                            Facsimile: (212) 257-5796

---

*2; cf. Blackbird Tech LCC v. Serv. Lighting & Elec. Supplies, Inc.*, No. 15-CV-00053, 2016 WL 2904592, at *6 (D. Del. May 18, 2016) (requiring covenant not to sue on patents acquired during duration of protective order).  On the other hand, cases declining to impose an acquisition bar typically involve a failure by the movant to show any risk of inadvertent disclosure.  *See, e.g., Intellectual Ventures I*, 2019 WL 343242, at *4 (declining to enter an acquisition bar when movant had not "made a showing of good cause or a significant risk of inadvertent disclosure as required"); *Prism Techs., LLC v. AT & T Mobility, LLC*, No. 12-CV-00122, 2013 WL 100390, at *5–6 (D. Neb. Jan. 8, 2013) (declining to enter an acquisition bar against an individual who was already prohibited from accessing highly confidential information).

Samuel F. Baxter
State Bar No. 01938000
Email: sbaxter@mckoolsmith.com
Jennifer L. Truelove
State Bar No. 24012906
Email: jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

***ATTORNEYS FOR PLAINTIFF***
***VOCALIFE LLC***

*/s/ Zachary M. Briers (with permission)*
Michael E. Jones
Texas Bar No. 10929400
Email: mikejones@potterminton.com
**POTTER MINTON, PC**
110 North College, Suite 500
Tyler, Texas 75702
Telephone: (903) 597-8311
Facsimile: (903) 993-0846

OF COUNSEL:
Zachary M. Briers (pro hac vice)
Email: zachary.briers@mto.com
Heather E. Takahashi (pro hac vice)
Email: heather.takahashi@mto.com
Vincent Y. Ling (pro have vice)
Email: vinny.ling@mto.com
Robin S. Gray (pro hac vice)
Email: robin.gray@mto.com
Mica L. Moore (pro hac vice)
Email: mica.moore@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100

***ATTORNEYS FOR DEFENDANT***
***GOOGLE LLC***

10

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 18, 2021, a true and correct copy of the above and foregoing document has been served on counsel of record via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Vincent J. Rubino, III*
Vincent J. Rubino, III

## **CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that all counsel of record have met and conferred in accordance with Local Rule CV-7(h) and this joint motion is opposed.

*/s/ Vincent J. Rubino, III*
Vincent J. Rubino, III
